**IN RE: Michael H. MELTZER, Alleged Debtor.**

**No. 13 B 31151**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Signed July 29, 2015

Howard Leventhal, pro se.

## MEMORANDUM OPINION

A. Benjamin Goldgar, United States Bankruptcy Judge

This long-dismissed involuntary chapter 7 case is awaiting ruling on the appropriate sanctions to be levied against the petitioners because the case was filed in bad faith. Although the sanctions question is fully briefed and has been under advisement for some time, two of the petitioners have persisted in filing frivolous motions designed to waste the time of the alleged debtor and cause him to withdraw his sanctions request. Now before the court is the latest of these motions, a motion from petitioner Howard Leventhal to "dismiss pending sanctions order against petitioners." (Dkt. No. 191).

Because the motion violated Rule 9011(b), Fed. R. Bankr. P. 9011(b), Leventhal will be sanctioned for filing it, a sanction independent of the sanctions for filing the involuntary petition.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

See Baermann v. Ryan (In re Ryan), 411 B.R. 609, 613 (Bankr.N.D.Ill.2009); Troost v. Kitchin (In re Kitchin), 327 B.R. 337, 359 (Bankr.N.D.Ill.2005). The court retains jurisdiction although the case was dismissed on December 18, 2013. In re Letourneau, 422 B.R. 132, 135 (Bankr. N.D.Ill.2010); Kitchin, 327 B.R. at 359.

### 2. Background

The sanctions order that Leventhal wants "dismissed" is the court's order dated August 27, 2014, addressing an involuntary case that Leventhal, his ex-wife Malgorzata Kubiak, and a corporation Leventhal created solely for the purpose had filed against Michael Meltzer. See In re Meltzer, 516 B.R. 504 (Bankr.N.D.Ill. 2014). Meltzer was Kubiak's landlord, and it turned out that Leventhal and his co-petitioners had filed the petition to stall an eviction action that Meltzer was pursuing against Kubiak in Illinois state court. Id. at 520. After a trial at which Leventhal was the only petitioner who appeared (and at which he repeatedly asserted his Fifth Amendment privilege), the court found the petition had been filed in bad faith. "Indeed," the court concluded, "the bad faith was grotesque: the case was thoroughly fraudulent and an egregious abuse of the bankruptcy system." Id. at 514.

The court also concluded that Meltzer was entitled to a variety of remedies, including awards of attorney's fees, costs, and punitive damages, under sections 303(i) and (k) of the Bankruptcy Code, 11 U.S.C. § 303(i), (k). Id. at 514–15. But the precise amounts of those awards remain to be decided. So does Meltzer's request for an order under Rule 9011(c) barring Leventhal and anyone associated with him from ever filing anything again in the bankruptcy court for this district. Those questions are briefed and under advisement.

Although the sanctions questions are all that remain of the case, Leventhal, Kubiak, or both have persisted in filing motions.[1] Some sought sanctions against Meltzer; others have been aimed at uncovering supposed ex parte communications in the case. (*See* Dkt. Nos. 165, 173, 174, 178). At a hearing on February 4, 2015, Leventhal was reminded that with the question of appropriate sanctions fully briefed and under advisement, he had no reason to file anything else. (Tr. dated Feb. 4, 2015, Dkt. No. 198, at 5). He was also warned (and an order was entered repeating the warning) that "the next frivolous motion filed by either [Leventhal or Kubiak] in this matter will result in an order to show cause why sanctions should not be imposed under Rule 9011." (Tr. dated Feb. 4, 2015, Dkt. No. 198, at 5; Dkt. No. 179).

Despite the warning, on May 15, 2015, Leventhal delivered to chambers (and also filed with the court) a request under the Freedom of Information Act ("FOIA") seemingly intended to root out suspected ex parte communications in the case. (Dkt. No. 189). The FOIA request sought, among other things, records of all internet searches the undersigned judge or his staff had conducted "involving any party" in the

case; records of all telephone calls concerning the case, any party to the case, or any attorney in the case; and records of any ex parte communications in the case contained in "the judge's file." (*Id.*). The undersigned judge was told to provide the information within twenty days and was also told that Leventhal reserved his right "to petition the District Court to compel a full and complete response." (*Id.*). Neither the judge nor the court responded to the FOIA request.[2]

Then, on June 12, 2015, Leventhal filed the motion now at issue. In it, he asserted that the August 2014 sanctions order should be "dismissed" because the involuntary case against Meltzer had involved a "meaningful and significant volume of ex parte communication." (Dkt. No. 191 at 2). As proof, Leventhal attached a transcript of a January 2015 hearing in *United States v. Leventhal*, No. 1:13–cr–00695–BMC (E.D.N.Y.).[3] At that hearing, an Assistant U.S. Attorney not only mentioned this court's August 2014 order but also said the undersigned judge had "referred Mr. Leventhal to the U.S. Attorney's Office for prosecution in this matter [meaning the *Meltzer* case]." (Dkt. No. 191, Ex. 1 at 13).[4] Despite the revelation

1. Whether Kubiak herself filed any of the post-ruling motions is doubtful. After the initial petition, nearly all of Kubiak's purported filings in the case came from Leventhal, who affixed to them a photographic image of Kubiak's signature. *Meltzer*, 516 B.R. at 513 n. 9. At trial, Leventhal submitted as an exhibit an affidavit purportedly from Kubiak saying that Leventhal had filed all the papers in the case, and she was unfamiliar with the content of any of them. *Id.* at 513. But the affidavit itself bore the same photographic image of Kubiak's signature. *Id.* Asked at trial whether he had prepared and signed the affidavit, Leventhal asserted his Fifth Amendment privilege. *Id.*

2. A search of the district court's docket shows that as of the date of this decision Leventhal has not filed an action to compel a response.

3. Leventhal was charged in the Eastern District of New York in connection with a scheme to defraud a Florida company out of $800,000, a scheme in which he forged the signature of the Canadian Deputy Minister of Health and created phony telephone and fax numbers for her. (*Id.*, Dkt. Nos. 1, 11). In December 2013, Leventhal pled guilty to one count each of wire fraud and aggravated identity theft. He is awaiting sentencing.

4. There was indeed a referral. The referral was made by letter from the undersigned judge to U.S. Attorney Zachary Fardon on August 28, 2014, the day after the sanctions

of this ex parte communication, Leventhal said, the court had "stood in the way of disclosure" of the many other ex parte communications because his FOIA request had not been answered. (Dkt. No. 191 at 3).

Leventhal's motion to "dismiss" the August 2014 order was set to be presented on June 24, 2014. He failed to appear, and the motion was denied. (*Id.*, No. 192). Because the motion seemed to violate Rule 9011(b), an order was entered in accordance with Rule 9011(c)(1)(B) requiring Leventhal to show cause why there had been no violation. (*Id.*, No. 193); *see Letourneau*, 422 B.R. at 139 (explaining the purpose of a show cause order under Rule 9011(c)(1)(B)). Leventhal filed a response to the show cause order. (Dkt. No. 201).

### 3. Discussion

Leventhal's motion to "dismiss" the sanctions order violated Rule 9011(b) in multiple ways. The motion had no basis in law (or a nonfrivolous argument for its extension, modification, or reversal). The motion had no basis in fact (or any facts that an investigation might uncover after a reasonable opportunity). And the motion was filed for an obviously improper purpose. Leventhal will be sanctioned for filing it.

### a. Rule 9011

■ Rule 9011 is the bankruptcy analogue of Rule 11 of the Federal Rules of Civil Procedure and is "essentially identical" to Rule 11. *In re Excello Press, Inc.*, 967 F.2d 1109, 1111 (7th Cir.1992); *In re Collins*, 250 B.R. 645, 659 (Bankr.N.D.Ill. 2000) (internal quotation omitted). Like

Rule 11, Rule 9011 is intended to deter baseless and abusive litigation and litigation tactics. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Corley v. Rosewood Care Ctr., Inc.*, 388 F.3d 990, 1013 (7th Cir.2004); *Kitchin*, 327 B.R. at 363.[5]

Under Rule 9011(b), every person filing a "petition, pleading, written motion, or other paper" with the bankruptcy court makes four certifications to the best of his "knowledge, information and belief" formed after a reasonable inquiry. Fed. R. Bankr. P. 9011(b). Three are relevant here. The first is a certification that the paper is not presented for any improper purpose. Fed. R. Bankr. P. 9011(b)(1). The second is that the legal contentions in the paper have a basis in existing law, or a nonfrivolous argument either for the law's extension, modification, or reversal, or for the establishment of new law. Fed. R. Bankr. P. 9011(b)(2). The third is that the paper's factual contentions have evidentiary support or, if specifically identified as such, are likely to have support after a reasonable opportunity for further investigation. Fed. R. Bankr. P. 9011(b)(3). If the rule is violated, the violator can be sanctioned. Fed. R. Bankr. P. 9011(c).

■ Rule 9011 applies to pro se parties like Leventhal just as it does represented parties and their lawyers. *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990); *Shrock v. Altru Nurses Registry*, 810 F.2d 658, 661–62 (7th Cir. 1987). By the terms of the rule itself, an

order was entered. The Assistant U.S. Attorney in New York likely learned of the referral from his counterparts in Chicago.

**5.** *Cooter & Gell* and *Corley* concerned Rule 11, not Rule 9011. Because the rules are largely the same, case law under Rule 11 is helpful in the interpretation of Rule 9011.

*Ryan*, 411 B.R. at 613 (noting that "courts look frequently to cases that interpret Rule 11 when construing Bankruptcy Rule 9011"); *Collins*, 250 B.R. at 659 (stating that "Rule 11 precedents may be applied to make decisions under Rule 9011").

"unrepresented party" who presents a paper to the court makes the same certifications under Rule 9011(b) that "an attorney" does. *See* Fed. R. Bankr. P. 9011(b). Although pro se status can be taken into account in imposing sanctions, *Vukadinovich*, 901 F.2d at 1445, it does not relieve a pro se party from his duties under the rule, *Phillips v. ITT Educ. Servs., Inc.*, No. 10 C 2441, 2010 WL 4423953, at *1 n. 1 (N.D.Ill. Oct. 25, 2010); *Chapman v. Charles Schwab & Co.*, No. 01 C 9697, 2002 WL 818300, at *13 (N.D.Ill. Apr. 30, 2002). Sanctions can be imposed for any frivolous paper, regardless of who presents it. *Vukadinovich*, 901 F.2d at 1445; *see also Farguson v. MBank Houston, N.A.*, 808 F.2d 358 (5th Cir.1986) (noting that pro se status provides "no impenetrable shield" to sanctions).

### b. Leventhal's Violations

### i. No Legal Basis

■ Leventhal's motion violated Rule 9011, first, because the motion had no basis in existing law, any good faith argument for the extension, modification, or reversal of existing law, or any good faith argument for the establishment of new law. Nor has Leventhal shown that he made a reasonable inquiry into the law before filing the motion. The motion therefore ran afoul of Rule 9011(b)(2).

Leventhal sought to "dismiss" the sanctions order on the ground that the case had been rife with ex parte communications, and the court had stymied his efforts to use the FOIA to investigate them.[6] But the only supposedly ex parte communication identified in the motion was the

court's written referral of Leventhal to the U.S. Attorney in Chicago for prosecution in connection with the *Meltzer* case. That communication was one the court was legally obligated to make. *See* 18 U.S.C. § 3057(a) (stating that any judge with reasonable grounds for believing bankruptcy fraud has been committed "shall report" the facts and circumstances to the U.S. Attorney). It was not a communication about which Leventhal was entitled to know. *See Kittay v. Fowler (In re Stockbridge Funding Corp.)*, 153 B.R. 654, 656 (Bankr.S.D.N.Y.1993) (finding criminal referrals under section 3057(a) to be privileged). Therefore, it was not an ex parte communication. *See In re Goodwin*, 194 B.R. 214, 222 (9th Cir. BAP 1996) (holding that a criminal referral under section 3057(a) is not an ex parte communication).

■ As for the FOIA request Leventhal sent to the court, the request was not answered because it did not have to be: federal courts are expressly exempt from the Freedom of Information Act. *See* 5 U.S.C. § 551(1)(B) (excluding "the courts of the United States" from the definition of an "agency" subject to FOIA); *see also Lovell v. Alderete*, 630 F.2d 428, 434 n. 10 (5th Cir.1980) (observing that "[c]ourts do not fall within the reach of the FOIA"); *Goddard v. Whitmer*, No. 09–CV–404–JMH, 2010 WL 116744, at *2 (E.D.Ky. Jan. 6, 2010) (same). Litigants in federal courts are not entitled to use the FOIA to rummage through the files of the judges hearing their cases.

In his response to the show cause order, Leventhal distinguishes *Goodwin* because the case involved a motion to disqualify the

---

6. In his response to the show cause order, Leventhal suggests that his motion was brought under section 305(a)(1) of the Bankruptcy Code. (Resp. at 2). That section, however, permits the court to dismiss "a case under this title," not a sanctions proceeding.

11 U.S.C. § 305(a)(1). The involuntary case against Meltzer was dismissed in December 2013. (Dkt. No. 36). The trial on the sanctions requests was held post-dismissal in March 2014. (*See id.*, No. 50). There is no case to dismiss.

bankruptcy judge. (Resp. at 3). He also claims that Bankruptcy Rule 9003 obviates any duty a bankruptcy court has to make a criminal referral under section 3057(a). (*Id.* at 4). And he argues that if the FOIA does not apply to judges, it ought to. (*Id.* at 6).

These arguments are meritless. *Goodwin* concerned a debtor's allegation that a bankruptcy judge had an ex parte conversation with a chapter 11 trustee about a criminal referral. *Goodwin*, 194 B.R. at 218–19. The court concluded there had been no such communication but went on to say that "even if the contact had taken place it was not ex parte." *Id.* at 222. If a party has no right to notice of a communication or an opportunity to respond, the court reasoned, the communication is not ex parte, and a debtor has "no ... right to notice and an opportunity to respond before a criminal referral is made." *Id.* at 223. The court added that since the bankruptcy judge had a duty under section 3057(a) to make a criminal referral, the statute "appears to contemplate that such allegedly 'ex parte' contacts may take place." *Id.* *Goodwin* is directly on point. That the decision involved a motion for disqualification is irrelevant.

Rule 9003(a) does prohibit ex parte communications, as Leventhal notes. *See* Fed. R. Bankr. P. 9003(a). But under *Goodwin*, this court's letter making a criminal referral to the U.S. Attorney was not one. For that matter, the letter was not an ex parte communication under Rule 9003(a). The rule prohibits ex parte communications "concerning matters affecting a particular case or proceeding." *Id.* That means "matters which are not yet settled or adju-

dicated by the judge, unresolved matters still pending before the court...." *Bilzerian v. Shinwa Co. Ltd.*, 184 B.R. 389, 394 (M.D.Fla.1995). The criminal referral was made on August 28, 2014, the day *after* the August 2014 order was entered finding the involuntary case had been filed in bad faith. By the time of the criminal referral, the court had already adjudicated the bad faith question. The referral did not concern matters "affecting" the involuntary case in any event; rather, it suggested that a separate criminal prosecution of Leventhal for bankruptcy fraud might be in order.[7]

■ As for the FOIA, Leventhal does not deny the statute is clear on its face, with no room for interpretation, and the federal courts are not subject to it. His argument that Congress ought to change the statutory definition of "agency" in the FOIA to include the federal courts is not a "nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. 9011(b)(2). To satisfy Rule 9011(b)(2), the argument must be one for the extension, modification or reversal of existing law that a court can actually extend, modify, or reverse, or it must be one for the establishment of new law a court can actually establish. Congress, not the courts, enacts and amends statutes. *Arkansas State Bank Comm'r v. Resolution Trust Corp.*, 911 F.2d 161, 177 (8th Cir.1990).

■ Despite the legally baseless nature of his motion, though, Leventhal still has an out. As discussed earlier, the certification under Rule 9011(b)(2) is a certification

7. Even if the criminal referral had been an ex parte communication, Rule 9003(a) prohibits ex parte communications "[e]xcept as otherwise permitted by applicable law." Fed. R. Bankr. P. 9003(a); *see also U.S. Trustee v. Vance*, 189 B.R. 386, 392 (W.D.Va.1995) (making this observation and noting that Canon 3A(4)(a) of the Code of Conduct for U.S. Judges has a similar exception). Section 3057(a) not only permits a criminal referral, it compels one.

that a paper filed with the court has a reasonable legal basis formed "after an inquiry reasonable under the circumstances." Fed. R. Bankr. P. 9011(b). Even a legally unsupportable paper will not be sanctionable, then, if the person who filed it can demonstrate the reasonable legal research steps that led him to file it. *See* Georgene M. Vairo, *Rule 11 Sanctions: Case Law, Perspectives and Preventive Measures* § 6.05 at 339 (3d ed.2004).

■ In his response, however, Leventhal does not describe the legal research he performed before filing the motion. As far as the record shows, he performed no research. If a legally unsupportable paper is presented to the court, and the person presenting it cannot at least demonstrate the legal research steps that led to the paper's filing, sanctions "will invariably follow." *Id.*; *see, e.g., Frank v. D'Ambrosi*, 4 F.3d 1378, 1387 (6th Cir.1993) (sanctioning under Rule 11 attorney who admitted "he had not researched the law at all").

Because Leventhal's motion to "dismiss" had no legal basis, and because Leventhal has not shown he made a reasonable inquiry into the law before filing it, the motion violated Rule 9011(b)(2).

### ii. No Factual Basis

Just as the motion lacked a legal basis, it lacked a factual one. The factual assertions in the motion had no evidentiary support, and Leventhal has not shown he made a reasonable inquiry into the facts before filing the motion—or any inquiry at all. The motion therefore violated Rule 9011(b)(3).

Again, the motion's central factual assertion was that there had "been a meaningful and significant volume of ex parte communication" in the case. (Dkt. No. 191 at 2).[8] Because of those supposed communications, Leventhal argued, the August 2014 order must be "dismissed." But his factual assertion was baseless. The only allegedly ex parte communication Leventhal mentioned in the motion, the August 2015 criminal referral, was not one. *See Goodwin*, 194 B.R. at 222. Leventhal identified no others. There have in fact been *no* ex parte communications in this case—not between the undersigned judge and the U.S. Attorney (here or in New York), not between the undersigned judge and the district judge in New York,[9] not between the undersigned judge and counsel for Meltzer, not between the undersigned judge and Meltzer himself, not between the undersigned judge and anyone.

In response to the show cause order, Leventhal fails to demonstrate any basis for his assertion. Instead, he compounds the problem, declaring that "[a]s Judge Goldgar has finally admitted on the record, there has been a meaningful and significant volume of ex parte communication in this matter, constructive ex-parte [*sic*] communication in the very least...." (Dkt. No. 201 at 3). But the only "admission" was the acknowledgment in the show cause order that there had been a criminal referral under section 3057(a). There was no "admission" of any ex parte communications, let alone a "meaningful and significant volume" of them. Repeating the unfounded factual assertion that led to the issuance of the show cause order hardly

---

8. Later in the motion, Leventhal also asserted that "Judge Goldgar initiated ex parte communications in this matter during its pendency." (*Id.* at 5).

9. This is not to suggest that a communication between the undersigned judge and the dis-

trict judge in New York would have been ex parte. It would not have been. *See* Code of Conduct for U.S. Judges, Canon 3A(4) cmt. (stating that "[a] judge may consult with other judges"). But there have been no such communications.

demonstrates the absence of a Rule 9011(b)(3) violation.[10]

▉▉▉] Again, though, Leventhal has an out. As with Rule 9011(b)(2), a factually unsupportable paper is not sanctionable under Rule 9011(b)(3) if there has at least been a reasonable inquiry into the facts. Fed. R. Bankr. P. 9011(b); *Harding Univ. v. Consulting Servs. Grp.*, 48 F.Supp.2d 765, 769 (N.D.Ill.1999). What constitutes a reasonable pre-filing investigation "depends on the circumstances of each case." *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 225 (7th Cir.1990); *Harding Univ.*, 48 F.Supp.2d at 769. In deciding whether those circumstances are present, courts consider a variety of factors. *See Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1028 (7th Cir.1999).

But those factors need not be considered here because Leventhal does not explain what investigation he made. *See Smart Options, LLC v. Jump Rope, Inc.*, No. 12 C 2498, 2013 WL 500861, at *4 (N.D.Ill. Feb. 11, 2013) (sanctioning under Rule 11(b)(3) a party that "failed to offer evidence of specific investigative steps it took before filing"). He does not suggest he made any investigation. As far as the record shows, Leventhal got wind of the criminal referral during a hearing in his criminal case, concluded (wrongly) that the referral was an ex parte communication, and then speculated that there must have been a "meaningful and significant volume" of ex parte communications. Baseless speculation is not a reasonable investigation for purposes of Rule 9011(b).

▉▉▉] Sanctions under Rule 9011(b)(3) are warranted when a factual allegation is "utterly lacking in support." *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir.2010) (internal quotation omitted); *see also Harding Univ.*, 48 F.Supp.2d at 769; Vairo, *supra*, § 6.04[a] at 335. Because Leventhal's motion to "dismiss" was utterly lacking in factual support, and because Leventhal has not shown he made a reasonable inquiry into the facts before filing it, the motion violated Rule 9011(b)(3).

### iii. Improper Purpose

Finally, Leventhal filed the motion for an improper purpose: to harass Meltzer until he decides it is no longer worth pursuing Leventhal or Kubiak for filing the involuntary petition. The motion therefore violated Rule 9011(b)(1).

▉▉▉▉] The "improper purpose clause" in Rule 9011(b)(1) is directed at abusive litigation practices. *Letourneau*, 422 B.R. at 138; *Ryan*, 411 B.R. at 615. It prohibits the filing of a paper for any improper purpose, " 'whether or not [the paper] is supported by the facts and law, and no matter how careful the pre-filing investigation.' " *Ryan*, 411 B.R. at 615 (quoting *Kitchin*, 327 B.R. at 366); *see also Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir.2001).

▉▉▉▉] The critical question in determining whether Rule 9011(b)(1) has been vio-

---

**10.** In his response, Leventhal claims for the first time that the undersigned judge was "influenced and prejudiced against the [petitioners] as a result of such ex parte communications," even that the case has been "infused and permeated with Judge Goldgar's bias." (Dkt. No. 201 at 3–4). But Leventhal has never moved for disqualification on this ground, nor would such a motion have succeeded. Apart from the ex parte communica-

tions Leventhal falsely alleges, his claims of bias are based on rulings during the case (*see id.* at 4) and so would not support disqualification. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). The bias claims are irrelevant to the Rule 9011(b) question here.

lated is *why* the allegedly offending paper was filed. *Kitchin*, 327 B.R. at 366; *see also Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987). That question is answered by considering whether "objectively ascertainable circumstances" support the inference that the purpose of the filing was improper. *Ryan*, 411 B.R. at 615 (internal quotation omitted); *see also Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir.1988) ("Although the emphasis is on the party's motive for filing the paper, the party's conduct is judged on an objective standard based on the circumstances of the case.").

To understand why Leventhal filed the offending motion, it helps to understand why he and Kubiak filed the involuntary case in the first place. After Kubiak defaulted on her lease with Meltzer and Meltzer served her with a notice terminating the tenancy, Kubiak retaliated with an action against Meltzer in the district court alleging he had violated the Fair Housing Act by sexually harassing her. *See Meltzer*, 516 B.R. at 507. Meltzer nevertheless went ahead and filed an eviction action against Kubiak in Illinois state court. *Id.* Leventhal then threatened to file an involuntary petition against Meltzer, warning that the petition would deprive him of his eviction action because "legal claims become part of the bankruptcy estate and may only be litigated by the bankruptcy trustee, not the debtor." *Id.* at 508.

Undaunted, Meltzer moved in the eviction action for a judgment of possession, and Leventhal made good on his threat, filing the involuntary petition. *Id.* What Leventhal failed to understand, however, is that an involuntary chapter 7 petition does not have the same effect as a voluntary one: section 303(f) of the Bankruptcy Code lets the alleged debtor in an involuntary case continue to use property as if the petition had not been filed. *See* 11 U.S.C. § 303(f). The Illinois judge in the eviction action did understand that. He proceeded to trial and entered judgment in favor of Meltzer and against Kubiak. *Meltzer*, 516 B.R. at 511.

With judgment entered in the eviction action, the involuntary case no longer served any purpose, and Leventhal and Kubiak largely lost interest. No summons was ever issued, and the petition was never served. *Id.* Although he had not been served, Meltzer moved to dismiss the case and sought sanctions against the petitioners. *Id.* at 512. Leventhal alone responded to the dismissal motion, but when none of the petitioners filed pretrial materials, the motion was granted and the case dismissed. *Id.* Some months later, the matter proceeded to an evidentiary hearing on the sanctions question. *Id.* at 512–13. In its August 2014 order, the court found Meltzer entitled to an assortment of sanctions and other relief. *Id.* at 513–21.

Ever since the eviction judgment was entered, Leventhal has been backpedaling, attempting to make the sanctions requests go away. At first, he sought to settle with Meltzer on a "global walkaway" basis. *Id.* at 511. When Meltzer refused that proposal, Leventhal threatened "foreclosure on your house in Colorado." *Id.* Days later, Leventhal demanded that Meltzer agree to have the eviction judgment vacated and warned him that "the cost of refusal will increase to infinity" because "[t]here are 3,044 county courts in the U.S. and about 50 federal courts." *Id.* Again, Meltzer refused to relent. *Id.*

Even after the trial on the sanctions question in the involuntary case, Leventhal filed motion after motion designed to back Meltzer off his sanctions requests. (*See* Dkt. Nos. 165, 173, 174, 178). The latest motion is just another in the series and was filed for the same purpose. In it, Leventhal points out the expense to Melt-

zer of continuing to pursue sanctions since "an appeal to the District Court will be filed" from any sanctions order, and if that fails "then an appeal to the United States Court of Appeals." (*Id.*, No. 191 at 3). He declares that Meltzer "will not ever recover" any monetary sanctions and accuses Meltzer's lawyers of "draining Meltzer of money to no productive outcome," something that is "simply amoral, wrong and should not continue." (*Id.* at 4).

Ironically, Leventhal's response to the show cause order confirms that the motion is yet another salvo in the rear-guard action he is fighting. Again, Leventhal comments that Meltzer's interests "would be best served by dismissing this case without any order of sanctions." (*Id.*, No. 201 at 3). Again, he complains that "Meltzer's attorneys have misguided and abused Mr. Meltzer enough, all the while generating fees for Meltzer to pay that cannot ever, will not ever be recovered...." (*Id.* at 7). No sanctions are warranted, Leventhal insists, for his "having the temerity to try again for the Nth time to mitigate Michael Meltzer's continuous evaporation of money in this matter at the parasitic hands of his attorneys...." (*Id.* at 8).

But in fact they are warranted—and for precisely that reason. Leventhal's motion had the same object as every motion he has filed since the involuntary case was dismissed: to harass Meltzer, to run up his litigation costs, to make the prospect of pursuing sanctions for the bogus case so unappetizing that Meltzer will eventually give up. Filing a paper to harass an opponent is an improper purpose. Fed. R. Bankr. P. 9011(b)(1). So is filing the paper to increase his litigation costs. *Id.; see, e.g., Frederick v. Easty*, No. 14 C 342, 2015 WL 603884, at *10 (N.D.Ill. Feb. 11, 2015) (imposing sanctions on this ground). And so is filing it to intimidate or coerce him to take some action. *Argentieri v.*

*Fisher Landscapes, Inc.*, 15 F.Supp.2d 55, 63 (D.Mass.1998); *see also Crawford v. Unique Nat'l Collections*, No. WDQ–11–3454, 2012 WL 6681691, at *5 (D.Md. Dec. 19, 2012); *Myers v. Sessoms & Rogers, P.A.*, 781 F.Supp.2d 264, 268 (E.D.N.C. 2011). Leventhal had no right to file a factually and legally baseless motion as a way of forcing Meltzer to abandon the sanctions to which the court has found him entitled.

Because Leventhal's filed his motion to "dismiss" for that purpose, and because that purpose was improper, the motion violated Rule 9011(b)(1).

### c. Sanctions

 There remains the question of the appropriate sanction for filing the motion. When the court initiates a Rule 9011 proceeding, Rule 9011(c)(2) limits the possible monetary sanction to "an order to pay a penalty into court." Fed. R. Bankr. P. 9011(c)(2); *see Vollmer v. Publishers Clearing House*, 248 F.3d 698, 711 n. 11 (7th Cir.2001). Generally, a court enjoys broad discretion in determining the appropriate size of that penalty, *see Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir.2003), provided it is no greater than "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," Fed. R. Bankr. P. 9011(c)(2); *see also Divane*, 319 F.3d at 314 (noting that discretion is limited to setting a sanction that "will serve the deterrent purpose of Rule 11"). Absent "extraordinary circumstances," the court of appeals has said, "*sua sponte* sanctions are generally limited to several thousand dollars." *Vollmer v. Selden*, 350 F.3d 656, 663 (7th Cir.2003).

 In most cases a single motion would not warrant a monetary penalty in the thousands of dollars. For several reasons, though, anything less is unlikely to deter Leventhal from continuing to plague

Meltzer and the court with frivolous, harassing motions.

● *First,* Leventhal was specifically warned that the Meltzer sanctions matter was under advisement, that as a consequence he had no reason to file anything else, and that if he chose to file another frivolous motion, he risked Rule 9011 sanctions. (Tr. dated Feb. 4, 2015, Dkt. No. 198; Dkt. No. 179). Despite the warning, Leventhal filed the baseless motion to "dismiss." The warning did not deter him in the least. *Cf. Deere & Co. v. Deutsche Lufthansa A.G.,* 855 F.2d 385, 393 (7th Cir.1988) (affirming sanctions imposed after defendant ignored court's warning not to file motions irrelevant to the issues in the case); *Jennings v. Emry,* 133 F.R.D. 134, 136 (N.D.Ind.1990) (awarding sanctions where counsel failed to heed warnings from the court not to pursue frivolous claims).

● *Second,* Leventhal as well as Kubiak have a long history of abusing both the federal and state judicial systems. Even before the campaign against Meltzer, for example, Leventhal had pursued extensive litigation against Gene Schenberg, a Missouri resident, bringing actions against Schenberg in two different Illinois state courts and the federal district court in Chicago. Schenberg then sued Leventhal in a Missouri state court, alleging abuse of process and malicious prosecution, and won, obtaining a $274,000 judgment. *See Schenberg v. Leventhal,* No. 11 A 1467 (Bankr.N.D.Ill.) (Dkt. No. 1, Ex. 2).

When Schenberg sought to collect his judgment (which was held nondischargeable in a chapter 7 case Leventhal filed, *see Schenberg v. Leventhal (In re Leven-*

*thal),* 481 B.R. 409 (N.D.Ill.2012) (affirming bankruptcy court's judgment), *aff'd without op.,* No. 12–3745, 2013 WL 599520 (7th Cir. Feb. 6, 2013)), Leventhal responded by suing not only Schenberg but also Schenberg's lawyers and by filing false lis pendens notices against their property. The action was dismissed, *see Leventhal v. Schenberg,* 917 F.Supp.2d 837 (N.D.Ill.2013), and the lis pendens notices were declared void, *see Leventhal v. Schenberg,* No. 11 C 4614, 2013 WL 1809889, at *4 (N.D.Ill. Apr. 29, 2013).[11]

Another more recent example arises out of litigation between Kubiak and Leigh Peterson. Peterson obtained a $103,000 judgment against Kubiak in a Wisconsin state court and filed an action in an Illinois state court to register the foreign judgment. Kubiak—really Leventhal acting on her behalf—removed the action to the district court. *See Peterson v. Kubiak,* No. 14 C 5754 (N.D.Ill.) (St.Eve, J.). Concluding it lacked jurisdiction, the district court remanded the action. (*Id.,* Dkt. No. 5). Kubiak appealed, but the appeal was dismissed. (*Id.,* Dkt. No. 13).

Kubiak (really Leventhal again) then sued Peterson and her Wisconsin lawyer in the district court. *See Kubiak v. Peterson,* No. 14 C 6691 (N.D.Ill.) (Shadur, J.). That action, which the court termed frivolous, was dismissed for lack of jurisdiction. (*Id.,* Dkt. No. 9). The next year, Kubiak (really Leventhal) removed the foreign judgment action again. *See Peterson v. Kubiak,* No. 14 C 9003 (N.D.Ill.) (Darrah, J.). Again, the district court remanded the action. (*Id.,* Dkt. No. 33). Again,

---

**11.** At the trial on Meltzer's sanctions requests, another lawyer assisting Schenberg in collecting the judgment testified that Leventhal had threatened to bring an action against the lawyer in Illinois state court, faxing a draft complaint that named as defendants the lawyer, his parents, and his sister. (Tr. dated Mar. 27, 2014, Dkt. No. 203, at 99–100). Leventhal had also threatened to file lis pendens notices against their property. (*Id.*).

Kubiak appealed, and this appeal, too, was dismissed. (*Id.*, No. 41).[12]

Because of this sorry history, earlier this year the district court placed both Leventhal and Kubiak on its list of restricted filers. *See In re Leventhal*, No. 15 C 352 (N.D.Ill. Jan. 15, 2015); *In re Kubiak*, No. 15 C 353 (N.D.Ill. Jan. 15, 2015). Neither is able to file an action in the district court without first receiving permission from the district court's executive committee. (A third attempt to remove a matter from the state court, for example, was turned away just last month. *See In re Kubiak*, No. 15 C 353 (N.D.Ill.) (Dkt. No. 4)).

▆▆▆ Since the goal of Rule 9011 is to deter abusive litigation, *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. 2447 (1990); *Corley*, 388 F.3d at 1013, a history of sanctionable conduct is relevant to the sanction that should be imposed, *Livonia Emps. Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir.2013) ("Recidivism is relevant in assessing sanctions."); *Janky v. Batistatos*, 259 F.R.D. 373, 381–83 (N.D.Ind.2009) (imposing increased monetary penalty because of respondent attorney's "history of litigation abuse"); *see also* Vairo, *supra*, § 9.03[a][3][E] at 542; *cf. Chapman*, 2002 WL 818300, at *6 (issuing show cause order to a "prolific pro se litigator" who had spent a decade "zealously pursuing countless frivolous lawsuits in the state and federal courts").[13]

● *Third*, monetary penalties have done little to deter Leventhal in the past. When Leventhal removed the Schenberg action from the Missouri state court to the district court, the district court not only remanded the action but also ordered Leventhal to pay Schenberg $5,000 as a sanction. *Schenberg v. Leventhal*, No. 06 C 749 (N.D.Ill.) (Dkt. No. 9). That was nine years ago. Since then, as just discussed, Leventhal has repeatedly removed state court matters to the district court despite the obvious absence of subject matter jurisdiction. Because past penalties have had no apparent effect on Leventhal, a stiffer penalty is warranted. *See Verdone*, 73 F.3d at 674 ("Verdone shows no sign that he will discontinue the pattern of behavior described here. A more stringent sanction is necessary.").

12. Removing actions from the state courts to the federal courts is a tactic Leventhal has used repeatedly. He tried to remove Schenberg's action from the Missouri state court to the district court in Chicago. *See Schenberg v. Leventhal*, No. 06 C 749 (N.D.Ill.) (Kendall, J.). The district court remanded the action. (*Id.*, Dkt. No. 9). Leventhal appealed, but the appeal was dismissed. (*Id.*, Dkt. No. 20). Years later, when Schenberg (like Peterson) sought to register his foreign judgment in an Illinois state court, Leventhal removed the action to the district court. *See Schenberg v. Leventhal*, No. 13 C 7702 (N.D.Ill.) (St.Eve, J.). The district court remanded the action. (*Id.*, Dkt. No. 17). Kubiak (really Leventhal) also removed Meltzer's eviction action to the district court. *See Meltzer v. Kubiak*, No. 13 C 5619 (N.D.Ill.) (Dow, J.). The district court remanded the action. (*Id.*, Dkt. No. 13).

13. Recidivism is relevant not only because of the cost frivolous litigation imposes on opposing parties but also because of the cost it imposes on the judicial system. *House v. Belford*, 956 F.2d 711, 719 (7th Cir.1992). Judicial resources are limited. Frivolous papers—papers like the motion to "dismiss" here—waste those resources, diverting the court's attention from parties who deserve it. *See In re McDonald*, 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) ("Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources."); *U.S. ex rel. Verdone v. Circuit Court*, 73 F.3d 669, 671 (7th Cir.1995). Litigants who file frivolous papers—litigants like Leventhal—"interfere with the orderly administration of justice." *Verdone*, 73 F.3d at 671. Courts have a responsibility to protect themselves from that abuse. *Id.*

■ It is true that Leventhal is pro se, and pro se status will sometimes mitigate a Rule 9011 violation. *See Vukadinovich,* 901 F.2d at 1445 (noting that status as a pro se litigant "may be taken into account"). But pro se status does not give someone "'an unfettered license to wage an endless campaign of harassment ... or abuse the judicial process.'" *Chapman,* 2002 WL 818300, at *13 (quoting *Pfeifer v. Valukas,* 117 F.R.D. 420, 423 (N.D.Il. 1987)). No leniency should be given to "frequent and experienced pro se litigants who have a reasonable degree of legal sophistication, and indeed have been sanctioned before in this District." *Zahran v. Frankenmuth Mut. Ins. Co.,* No. 94 C 4827, 1997 WL 53107, at *3 (N.D.Ill. Feb. 6, 1997) (internal quotation omitted).

■ In "extraordinary circumstances," a court-initiated sanction under Rule 9011 can exceed "several thousand dollars." *Vollmer,* 350 F.3d at 663. Because Leventhal has a long history of filing frivolous papers, and because he has ignored court warnings and monetary penalties in the past, the circumstances here are extraordinary. They demand a larger penalty. For his violation of Rule 9011, Leventhal will therefore be ordered to pay a penalty of $6,500.

### 4. Conclusion

For these reasons, the court finds that Howard Leventhal's motion to "dismiss pending sanctions order against petitioners" (Dkt. No. 191) violated Bankruptcy Rules 9011(b)(1)-(3). In accordance with Bankruptcy Rule 9011(c)(2), Leventhal is ordered to pay to the clerk of the court a penalty of $6,500. Payment is due in thirty (30) days. A separate order will be entered consistent with this opinion.